U.S. Department of Justice

United States Attorney

District of Maryland

Martin J. Clarke
Assistant United States Attorney
marty.clarke@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4840
MAIN: 410-209-4800
FAX: 410-962-0716

April 2, 2018

David B. Irwin, Esq.
301 W. Pennsylvania Avenue
Towson, Maryland 21204

Re: *United States v. Daniel Whitehurst.*

Dear Mr. Irwin:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to Daniel Whitehurst, the Defendant, by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by April 4, 2018, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1. The Defendant agrees to waive indictment pursuant to Federal Rule of Criminal Procedure 7(b) and plead guilty to a Criminal Information charging him with conspiracy to commit bank fraud, in violation of 18 U.S.C § 1349. The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offenses

2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

   a. The Defendant and at least one other person entered into an unlawful agreement;

   b. The purpose of the agreement was to knowingly execute or attempt to execute a scheme or artifice to defraud a financial institution and to obtain money, funds, assets or other property owned by or under the custody or control of a financial institution by means of false pretenses, representations, or promises;

   c. The financial institution's deposits were insured by the Federal Deposit Insurance

1

Corporation.

d. The Defendant knowingly and willfully became a member of the conspiracy.

## Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: thirty (30) years of imprisonment, five years of supervised release, and a fine of $1,000,000, or not more than twice the pecuniary gain or loss from the fraud pursuant to 18 U.S.C. § 3571(d). In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a. If the Defendant pled not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

   e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

   g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

   h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

   i. The Defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an Indictment against him. By agreeing to proceed by way of Information, he is giving up that right, and he understands that the charges will be filed by the United States Attorney without a Grand Jury.

<u>Advisory Sentencing Guidelines Apply</u>

  5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

  6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

   a. The parties agree and stipulate that pursuant to U.S.S.G. § 2B1.1(a)(1) the base offense level for the instant office is seven (7). An eight-level (8) upward adjustment is warranted pursuant to U.S.S.G. § 2B1.1(b)(1)(E) because the loss involved in the offense was more than $95,000, resulting in an adjusted offense level of fifteen (15).

   b. The parties also agree and stipulate that pursuant to U.S.S.G. § 2B1.1(b)(10)(C) a two-level (2) upward adjustment is warranted because the offense involved

3

sophisticated means, resulting in an adjusted offense level of seventeen (17).

   c. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

   d. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

   e. At the time of sentencing, this Office will recommend a reasonable sentence, including a recommendation for a fine, restitution and forfeiture.

## Restitution

  7. The Defendant agrees to the entry of a Restitution Order for the full amount of the victim's loss of $145,000. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant shall be jointly and severally liable with any codefendants the Court also orders to pay restitution for the full amount of the victim's loss. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

## Forfeiture

  8. The Defendant agrees to forfeit to the United States all of his right, title, and interest in any and all money, property, or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including the real property located at 127 Ebenezer Church Road, Rising Sun, Maryland, 21911.

   a. The Defendant agrees to assist fully the United States in the forfeiture of the foregoing asset. The Defendant agrees to take all steps necessary to pass to the United States

clear title to these assets, including but not limited to executing any and all documents necessary to transfer his interest in any of the above property to the United States, assisting in bringing any assets located outside the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The Defendant further agrees that he will not assist a third party in asserting a claim to the foregoing assets in an ancillary proceeding.

b. The Defendant knowingly waives all constitutional, legal and equitable defenses to the forfeiture of the foregoing assets. It is further understood that, in the event that the United States files a civil action pursuant to 18 U.S.C. § 981 or any law enforcement agency initiates a forfeiture proceeding seeking to forfeit these assets, the Defendant will not file a claim with the Court or agency or otherwise contest such a forfeiture action and will not assist a third party in asserting any such claim. It is further understood that the Defendant will not file or assist anyone in filing a petition for remission or mitigation with the Department of Justice concerning the forfeited assets.

## Collection of Financial Obligations

9. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

## Waiver of Appeal

10. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a) The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s).

    b) The Defendant and this Office knowingly waive all rights, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed, including any constitutional claims, the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of

5

the Defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release.

c) Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d) The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

11. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation Officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

12. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains

factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

13. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Stephen M. Schenning
Acting United States Attorney

By: ___/s/___
Martin J. Clarke
Harry M. Gruber
Assistant United States Attorneys

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_____   4/3/18
Daniel Whitehurst                Date

I am Mr. Whitehurst's attorney. I have carefully reviewed every part of this agreement with him, including the Sealed Supplement. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

_____   4·3·18
David Irwin, Esq.                Date

7

## Attachment A

**The Defendant stipulates and agrees that if this case had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The Defendant also stipulates and agrees that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.**

In 2012, the defendant, Daniel Whitehurst, a resident of Maryland, worked for a construction company primarily involved in real estate development. Conspirator A, a resident of Maryland, was the President and Chief Executive Officer for Cecil Bank (the "Bank"), located in Cecil County, Maryland. The construction company the defendant worked for had an ongoing business relationship with the Bank, including borrowing money for various residential construction projects.

In or around April 2012, Conspirator A told the defendant about a house that the Bank was acquiring from another client through foreclosure. The house was located at 127 Ebenezer Church Road, Rising Sun, MD ("127 Ebenezer"). Conspirator A told the defendant that she was personally interested in acquiring the house for herself. However, because she could not buy the house herself under the Bank's conflict of interest policy, she wanted his help to buy it and renovate it. An appraisal of the property prepared for the Bank prior to settlement reflected a market value of $295,000.

To conceal her purchase of the house from the Bank, Conspirator A asked the defendant if he would be willing to buy 127 Ebenezer for her in his name. In other words, Conspirator A asked the defendant to act as a straw buyer on her behalf. Around this same time, the defendant was negotiating with Conspirator A to get a line of credit from the Bank for himself and a business partner. The defendant agreed to purchase the house in his name for Conspirator A and make the upgrades she wanted. The defendant and Conspirator A discussed the details of how Conspirator A would get the defendant the money necessary to cover the down payment and complete the upgrades. The defendant and Conspirator A also discussed how the defendant would the sell the house to Conspirator A at his cost without realizing any profit after the settlement was over and the upgrades completed.

On May 14, 2012, Conspirator A and the defendant both drafted an offer for the defendant to submit to the Bank which falsely represented that he would be the purchaser of 127 Ebenezer. The purchase price in the offer was for $150,000, which was about half of the property's fair market value. To justify the low offer, the defendant provided Conspirator A with a list of homes sales in the area that were not comparable to 127 Ebenezer. On or about May 23, 2012, even though Cecil Bank had not yet received title to the property through the foreclosure process, Conspirator A informed the Bank's Board of Directors at one of its regular meetings that the defendant made an offer to purchase the property for $140,000. The Board of Directors authorized Conspirator A to negotiate the best possible deal with the defendant.

On August 13, 2012, subsequent to the Bank receiving title to the property in the name of their subsidiary, Novo Realty, LLC, the defendant presented a contract to the Bank to purchase 127 Ebenezer for $150,000, which Conspirator A signed and accepted on behalf of the Bank.

To finance part of the purchase price, the defendant applied for a $100,000 mortgage from Rosedale Federal Savings and Loan Association ("Rosedale") on October 16, 2012. The defendant represented to Rosedale that he was purchasing the property as an investment and that the source of the down payment was from his Scott Trade Securities account. In truth, the defendant was purchasing the house on behalf of Conspirator A and she was providing the cash for the down payment.

On or about October 31, 2012, prior to 127 Ebenezer going to settlement, Conspirator A electronically transferred $75,000 to the defendant's bank account to cover the cost of the down payment, closing costs and some of the upgrades. To conceal the true purpose of the wired funds, the defendant sent Conspirator A a fictitious real estate contract. The contract purported to show that the $75,000 that Conspirator A had wired to the defendant was for a deposit on a different property owned by the defendant in Havre de Grace, Maryland.

On November 21, 2012, at the settlement of 127 Ebenezer the defendant signed the Settlement Statement, Form HUD-1, as the Buyer and Conspirator A signed it as the Seller on behalf of the Bank's subsidiary, NOVO Realty. In reliance on the information provided by the defendant during the loan application process, Rosedale funded the first mortgage for the purchase. The Form HUD-1 falsely represented that the defendant had paid approximately $52,566 at settlement when, in fact, the down payment and all related closing costs were paid from the $75,000 that Conspirator A had wired to the defendant's bank account beforehand. Following the settlement, legal title to 127 Ebenezer was officially recorded under the defendant's name, not Conspirator A.

Beginning in or around June 2012 and continuing after settlement, the defendant and Conspirator A engaged in frequent correspondence about how she wanted to renovate 127 Ebenezer, including her selection of construction materials and color patterns for new kitchen cabinets, countertops and flooring. From on or about October 31, 2012, through on or about March 29, 2013, Conspirator A transferred approximately $60,000 in additional funds to the defendant to cover the cost of the upgrades to the house and reimburse the defendant for the mortgage payments he had made to Rosedale.

In or about April 2013, federal agents began interviewing Cecil Bank employees and borrowers about banking irregularities. Both the defendant and Conspirator A sought legal counsel. Ultimately, legal title to 127 Ebenezer was not transferred to Conspirator A.

Neither the defendant nor Conspirator A ever told Cecil Bank that Conspirator A was the true purchaser of 127 Ebenezer. Nor did the Bank know that the defendant and Conspirator A had orchestrated the sale of the foreclosed property at the fraudulent price of $150,000 instead of the appraised pre-renovation value of $295,000. As a result of the defendant's and Conspirator A's misrepresentations and material omissions, Cecil Bank lost approximately $145,000, *i.e.*, the amount it would have realized had the foreclosed property been listed and sold at fair market value.

_____    4/3/18
Daniel Whitehurst             Date

_____    4.3.18
David Irwin, Esq.             Date